In the Matter of the Arbitration Between
**TEXTILE WORKERS OF AMERICA, AFL–CIO, LOCAL 129, Petitioner,**

v.

**The COLUMBIA MILLS, INCORPORATED, Respondent.**

No. 78–CV–237.

United States District Court, N. D. New York.

Oct. 3, 1978.

Blitman & King by Charles E. Blitman, Syracuse, N.Y., for petitioner.

Bond, Shoeneck & King by Leslie H. Deming and David M. Pellow, Syracuse, N.Y., for respondent.

MUNSON, District Judge.

### MEMORANDUM—DECISION AND ORDER

This action was commenced by The Columbia Mills, Incorporated (the "Company") in New York State Supreme Court, Onondaga County, for the purpose of obtaining an Order staying arbitration between the Company and the Textile Workers of America, AFL–CIO, Local 129 (the "Union"). On May 10, 1978, New York State Supreme Court Justice Richard H. Donovan issued a temporary restraining order, and ordered that a hearing be held on May 23, 1978, on the Company's application for a stay. On May 22, 1978, the Union removed the action to this Court pursuant to 28 U.S.C. § 1441 since there was the requisite federal jurisdiction under § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. The Union now moves for an Order compelling arbitration.[1]

The Company, which is currently under a plan of liquidation, ceased operations at its Minetto, New York plant in late 1977, and laid off all the employees represented by the Union at such time. On October 25, 1977, Richard King, in his capacity as Union Shop Steward, presented the following grievance to the Company:

> This is to grieve that the intent and purpose of Article XIII, of the Labor Agreement, is to provide continuous group life, hospitalization and medical insurance for retirees meeting the requirements of Article XIII, for the duration of their natural lives. The remedy for this Grievance is that coverage be continued for retirees as per Article XIII.

The Company denied the grievance on October 28, 1977, on the ground that "no violation of the Labor contract has occurred."

The parties' collective bargaining agreement provides, in relevant part, that "[s]hould a difference or grievance regarding the operation of this Agreement or its interpretation respecting conditions of employment arise between the employer and Union or an employee . . ." then certain procedures, ultimately resulting in

---

1. In moving for an Order to compel arbitration, the Union filed a Petition pursuant to § 4 of the United States Arbitration Act. 9 U.S.C. § 4. It was not improper to follow such procedures.

*See International Association of Machinists & Aerospace Workers, AFL–CIO v. General Electric Co.,* 406 F.2d 1046, 1049–50 (2d Cir. 1969).

binding arbitration, should be resorted to. At the time that Mr. King presented his grievance to the Company, the collective bargaining agreement was still in effect, but shortly thereafter, on December 15, 1977, the Company, acting under the terms of a memorandum of understanding between the parties, notified the Union of its intention to terminate the agreement, effective January 1, 1978.

■ The duty to arbitrate is a matter of contract, and a party can be required to submit a dispute to arbitration only if he has agreed to arbitrate this dispute. *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL–CIO*, 430 U.S. 243, 250, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977); *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546–47, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). The determination as to whether the parties agreed to submit a particular dispute to arbitration is to be made by the courts, not the arbitrator, unless the parties' collective bargaining agreement clearly manifests a contrary intent. *John Wiley & Sons, Inc. v. Livingston, supra*, 376 U.S. at 546–47, 84 S.Ct. 909; *Atkinson v. Sinclair Refining Co., supra*, 370 U.S. at 241, 82 S.Ct. 1318; *United Steelworkers of America v. Warrior & Gulf Navigation Co., supra*, 363 U.S. at 583 n.7, 80 S.Ct. 1347.

Nevertheless, these traditional contract notions must be considered in light of the well-established federal policy favoring the resolution of labor disputes by arbitration. In order to effectuate this policy, the Supreme Court has created a presumption favoring arbitrability:

An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

*United Steelworkers of America v. Warrior & Gulf Navigation Co., supra*, 363 U.S. at 582–83, 80 S.Ct. at 1353 (footnote omitted). See also *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL–CIO, supra*, 430 U.S. at 255, 97 S.Ct. 1067; *Gateway Coal Co. v. United Mine Workers of America*, 414 U.S. 368, 377–80, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974); *John Wiley & Sons, Inc. v. Livingston, supra*, 376 U.S. at 549–50, 84 S.Ct. 909; *ITT World Communications, Inc. v. Communications Workers of America, AFL–CIO*, 422 F.2d 77, 81 (2d Cir. 1970); *International Longshoremen's Association, AFL–CIO v. New York Shipping Association*, 403 F.2d 807, 809 (2d Cir. 1968).

The Company advances various arguments in support of its request for a stay of arbitration. First, the Company argues that the grievance, filed by Mr. King, fails to cite a single instance in which the Company breached its obligations under Article XIII of the collective bargaining agreement. Hence, the Company argues that there is no duty to arbitrate until there is some action or inaction on its part which arguably constitutes a violation of Article XIII. On the other hand, the Union alleges that the Company has affirmatively stated that it will eliminate the benefits in question sometime during the calendar year 1978. The Union contends that it should be permitted to go to arbitration now, and not be forced to proceed, sometime subsequent to the completion of the plan of liquidation, with a grievance against a potentially nonexistent employer.

■ The Court is of the opinion that if the Company has, in fact, indicated its intention to eliminate the benefits under Article XIII at some particular time in the future, then there is a difference or grievance regarding the operation of the agreement or its interpretation which is ripe for submission to arbitration at this time. The Court believes that it is unnecessary for the parties to wait until benefits have actually been terminated. *See United Rubber, Cork, Linoleum & Plastic Workers of America, AFL–CIO, Local 102 v. Lee Rubber &*

*Tire Corporation,* 269 F.Supp. 708, 716 (D.N. J.1967), *aff'd,* 394 F.2d 362 (3d Cir.), *cert. denied,* 393 U.S. 835, 89 S.Ct. 108, 21 L.Ed.2d 105 (1968). If the Company has definite plans to eliminate the benefits, there does exist a concrete dispute between the parties, and, therefore, the arbitrator will not be asked to rule on a hypothetical question.

However, the Court is unable to determine, on the basis of the present record, whether or not the Company has advised the Union of plans to discontinue benefits under Article XIII. While the Union makes such allegations in the Petition which it filed in this Court, the Company, in its Answer, states that it lacks information sufficient to form a belief as to these allegations. For purposes of pleading, the Company's statement has the effect of a denial. Rule 8(b), Fed.R.Civ.P.; 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1262 (1969). The present record does not contain an adequate basis for the Court to determine the validity of the Union's allegations. Therefore, if there is no other reason why Mr. King's grievance would not be arbitrable under the parties' agreement, a hearing will have to be held to determine whether the Company has actually stated its intention to terminate the benefits under Article XIII at some particular time in the future.

■ Secondly, the Company argues that the purported grievance is not subject to arbitration under the parties' collective bargaining agreement, because a "grievance or dispute as to wages" is specifically excluded from the scope of arbitration.[2] In the present case, the contract has a broad arbitration clause, and in such circumstances, the language excluding certain disputes from arbitration must be "clear and unambiguous" or "unmistakably clear" in order to remove these disputes from the arbitral forum. *Gangemi v. General Electric Co.,* 532 F.2d 861, 865 (2d Cir. 1976); *International Union of Electrical, Radio & Machine Workers, AFL–CIO v. General Electric Co.,*

407 F.2d 253, 256 (2d Cir. 1968), *cert. denied,* 395 U.S. 904, 89 S.Ct. 1742, 23 L.Ed.2d 217 (1969); *International Association of Machinists & Aerospace Workers, AFL–CIO v. General Electric Co.,* 406 F.2d 1046, 1048 (2d Cir. 1969). The Court does not believe that the exclusion in this case is clear and unambiguous or unmistakably clear. While the term "wages" might be construed broadly to include all forms of deferred compensation, it might also be construed more narrowly to refer only to compensation which a worker receives at the end of a pay period. Hence, the exclusionary language is susceptible of an interpretation that would not preclude arbitration of the grievance in this case.

■ Furthermore, the Company contends that it did not agree to arbitrate matters concerning retirees since the collective bargaining agreement refers only to differences or grievances which arise between "the employer and Union or an employee." The Company relies upon *Allied Chemical & Alkali Workers of America v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971) to support its position that the present grievance cannot properly be regarded as a dispute between the employer, on the one hand, and the Union or an employee, on the other. However, this Court believes that *Pittsburgh Plate Glass* is inapposite, and feels that the grievance in this case can be characterized as a dispute between the employer and the Union. In *Pittsburgh Plate Glass,* the Supreme Court held that the retirement benefits of already retired employees were not a mandatory subject of bargaining under the National Labor Relations Act. In reaching this conclusion, the Court said that retirees were not employees within the meaning of § 8(a)(5) of the NLRA, and could not be included in the bargaining unit with employees who were then working.

The issue presented in this case is different than that considered in *Pittsburgh Plate Glass.* Here, unlike the latter cited case, the issue is not whether the Company

**2.** The exclusion from arbitration concerning wages does not apply to disagreements "concerning the rights or status of an individual employee."

must bargain with the Union over the benefits of retired employees, but rather whether the Company did, in fact, contractually commit itself to provide continuous insurance coverage for retirees for the duration of their natural lives. If the Company made such a commitment in the collective bargaining agreement it entered into with the Union, "then under accepted contract principles the union has a legitimate interest in protecting the rights of the retirees and is entitled to seek enforcement of the applicable contract provisions." *United Steelworkers of America, AFL–CIO v. Canron, Inc.,* 580 F.2d 77, 80–81 (3d Cir. 1978) (footnote omitted). For these reasons, the Third Circuit in *United Steelworkers of America v. Canron, Inc., supra,* recently affirmed a District Court Order directing that arbitration proceed between an employer and a union over the question of insurance coverage for retirees.

■ Finally, the Company argues that the termination of the collective bargaining agreement and the cessation of operations by the Company renders arbitration ineffective and inappropriate. It contends that termination of the collective bargaining agreement released the Union from its no-strike pledge and the Company from its agreement to arbitrate, the *quid pro quo* for the no-strike clause. It further contends that there can be no issue of labor peace here as there is no longer a continuing employer-employee relationship. However, in light of the Supreme Court's decision in *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL–CIO, supra,* these arguments must be rejected.

In *Nolde Brothers,* the employer and union were engaged in negotiations for a new collective bargaining agreement, and after negotiations had continued for some time without resolution, the union terminated the existing contract between the parties. Shortly thereafter, the employer, faced by a threatened strike, informed the union of its decision to close its plant permanently. The employer rejected the union's demand for severance pay called for in the collective bargaining agreement, and declined to arbitrate the severance-pay claim on the ground that its contractual obligation to arbitrate disputes terminated with the collective bargaining agreement. The Supreme Court concluded that although the dispute arose after the expiration of the collective bargaining contract, it clearly arose under that contract since the resolution of the underlying claim hinged on the interpretation given the contract clause providing for severance pay. The Court held that, in these circumstances, the employer would be required to submit the dispute to arbitration. In support of this conclusion, the Court indicated that the termination of the collective bargaining agreement would have little impact on many of the considerations behind the parties' decision to resolve their contractual differences through arbitration. The Court said,

> The contracting parties' confidence in the arbitration process and an arbitrator's presumed special competence in matters concerning bargaining agreements does not terminate with the contract. Nor would their interest in obtaining a prompt and inexpensive resolution of their disputes by an expert tribunal.

430 U.S. at 254, 97 S.Ct. at 1073.

In the present case, as in *Nolde Brothers,* the dispute arises under the collective bargaining agreement since the underlying claim rests upon the proper interpretation to be given to the relevant contract provisions. Therefore, the fact that the collective bargaining agreement has been terminated, and the fact that the Company's operations have ceased does not provide a sufficient reason to bar arbitration of the grievance presented in this case.

The Court, therefore, concludes that the present grievance is subject to arbitration if the Company has, in fact, indicated its intention to eliminate the benefits provided to retirees under Article XIII at some particular time in the future. An evidentiary hearing will have to be held to resolve this question. If the parties should now agree that the Company intends, at sometime in the future, to terminate the benefits in

question, the Court should be so advised. In such circumstances, a hearing would not be needed, and the Court would enter an Order compelling arbitration.

Accordingly, an evidentiary hearing will be held on October 10, 1978, at 4:00 p. m., at the United States Courthouse, Syracuse, New York.

It is so ordered.