**Robert ANDERSON, Jr., et al., Appellants,**

v.

**ALPHA PORTLAND INDUSTRIES, INC., et al., Appellees.**

**No. 83–1358.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1984.

Decided Jan. 16, 1985.

**1294**

George S. Hecker, Michael G. Biggers, St. Louis, Mo., for appellees Alpha Portland Industries, Inc. and the Ins. and Health Plan for Hourly Employees of the Alpha Portland Cement Co.; Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., of counsel.

S. Sheldon Weinhaus, St. Louis, Mo., for appellants; Levin & Weinhaus, St. Louis, Mo., of counsel.

Before LAY, Chief Judge, HEANEY, BRIGHT, ROSS, McMILLIAN, ARNOLD, JOHN R. GIBSON, FAGG and BOWMAN, Circuit Judges, En Banc.

JOHN R. GIBSON, Circuit Judge.

The issue before the court en banc is whether retired employees of Alpha Portland Industries, Inc., must exhaust grievance procedures before making claims for insurance benefits under a plan provided for in the collective bargaining agreements in effect when they retired. The district court required exhaustion, 558 F.Supp. 913 (E.D.Mo.1982), but a panel of this court reversed. 727 F.2d 177 (8th Cir.1984). We granted rehearing en banc, and we reverse the district court.

The appellants, plaintiffs below, are retired employees of an Alpha cement plant in St. Louis. They worked under collective bargaining agreements, negotiated by the United Cement, Lime and Gypsum Workers, which provided life and health insurance for active and retired employees through reference to a group insurance program embodied in a separate agreement. The appellants had all retired prior to December 1981 when, because of financial problems, Alpha closed its St. Louis cement plant (Alpha sold its last cement plant in September 1982 and no longer operates any such plants). The local union was then dissolved, and shortly thereafter Alpha announced it was terminating insurance benefits for retirees. Plaintiffs brought this action under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1982), and section 502 of the Employee Retirement Income Security Act (ERISA), *id.* § 1132, claiming the right to lifetime insurance benefits under the agreements in effect when they retired.

The insurance plan since 1973 essentially had provided that "[a]ny difference arising under this Program respecting the administration, determination and/or implementation of the Program shall be subject to the grievance procedure established in the [collective bargaining agreement] beginning with Step 2 of such procedure."[1] A sum-

---

1. The district court apparently looked to this language in holding that the contracts were "clear and unambiguous in establishing a binding method of dispute resolution." 558 F.Supp. at 916. This approach, however, presumes Alpha's underlying argument that retiree rights continued to be subject to change with each new collective bargaining agreement. If, as plaintiffs contend, benefits vested upon retirement, those individuals leaving the company before 1973 might not be bound by this subsequently added language "clearly and unambiguously" mandating exhaustion of the grievance procedure. Since, however, our interpretation of the

mary description of the insurance plan, however, distributed by Alpha to employees and retirees effective May 1, 1978, stated that an appeal from a denial of insurance benefits could be made through the grievance procedure *or* by filing a written complaint with the personnel department.

The grievance procedure provided as follows:

> All employees shall at all times make an effort to perform their duties in such manner as to promote the efficient operation of their department and the plant as a whole. When an employee has a grievance, he shall * * * make an effort to arrive at a satisfactory settlement with his foreman. Failing to do so, he or his representative may take the matter up with the Plant Manager. Should these representatives of the Company and the individual employee or his representative fail to agree, the matter shall then be submitted in writing to the Manager of Industrial Relations of the Company. After full consideration and such conferences as may be mutually agreed upon with a representative of the International Union of Cement, Lime and Gypsum Workers, the matter shall be considered settled when the employee's and the Company's representatives have reached an agreement.
>
>      \*     \*     \*     \*     \*     \*
>
> If an agreement cannot be reached in this manner, the matter may by mutual agreement be submitted to arbitration in such manner as shall be acceptable to both parties. The decision of an impartial arbitrator shall be final and binding upon both parties.

The district court entered summary judgment in favor of Alpha on the basis that the retirees' suit was barred by their failure to exhaust this contractual remedy.

■ Our approach is governed by the recent Supreme Court decision in *Schneider Moving & Storage Co. v. Robbins,* —— U.S. ——, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984). In *Schneider,* trustees of two multiemployer employee-benefit trust funds brought an action to enforce contribution and audit provisions against certain participating companies. The district court dismissed the suit pending exhaustion of remedies under the relevant collective bargaining agreements, but the Supreme Court reversed. In reaching its conclusion, the Supreme Court first rejected the applicability of a presumption in favor of arbitrability and then found that there was no express contractual language requiring, nor any indication of intent by the parties to require, exhaustion in regard to trustee claims relating to the fund. Thus, proceeding likewise, we look first to whether there is a presumption in favor of arbitrability as to grievances of retirees and then address the issues of contractual interpretation.[2]

### I.

The Supreme Court has held that, in light of national labor policy, contracts between unions and employers should be interpreted with a presumption in favor of requiring arbitration. *United Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Alpha argues that this presumption should extend to this case and that *Schneider* is distinguishable in that it dealt

---

most recent contract differs from that of the district court, it is unnecessary for us to examine also the language of earlier less-explicit contracts.

**2.** We recognize that the obligation to invoke grievance procedures is a matter of contract. *Schneider,* 104 S.Ct. at 1847 n. 5 (quoting *Robbins v. Prosser's Moving & Storage Co.,* 700 F.2d 433, 442 (8th Cir.1983)); *Atkinson v. Sinclair*

*Ref. Co.,* 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962). In *Delaney v. Union Carbide Corp.,* 749 F.2d 17 at 19 (8th Cir.1984), however, we distinguished *Schneider* as being a case in which "there was no clear agreement for the submission to arbitration of disputes" between trustees and employers. *Schneider,* rather than *Delaney,* controls here for that reason. *See infra* section II.

not with retirees but with trustees "outside the collective bargaining relationship." [3] Alpha, however, then proceeds without discussion to cite cases and quote language in a fashion so as to equate retirees with "employees" and "the union." We cannot agree that *Schneider* divides the world of labor plaintiffs into "trustees" and "non-trustees" with the presumption of arbitrability applying to all but the former; the issue instead is whether the retirees here are more similarly situated with the trustees in *Schneider* or with active employees and their unions as to whom arbitration generally has been required.

The Supreme Court in *Allied Chemical & Alkali Workers Local No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 172, 92 S.Ct. 383, 394, 30 L.Ed.2d 341 (1971), held that retirees are not "employees" within the meaning of the National Labor Relations Act, 29 U.S.C. §§ 151–168 (1982), and cannot properly be joined with active employees in a collective bargaining unit. Alpha seeks to avoid the import of this case by limiting it to the obligation to bargain on behalf of retirees, arguing that once a union chooses, as is still permissible, to so bargain, it then has an interest in enforcing the contract and thus the authority to represent retirees in grievance and arbitration proceedings. The cases Alpha cites, however, *e.g.*, *United Steelworkers v. Canron, Inc.*, 580 F.2d 77, 80–81 (3d Cir.1978); *Textile Workers Local 129 v. Columbia Mills*, 471 F.Supp. 527, 530–31 (N.D.N.Y.1978), support only the proposition that a union has standing to assert retirees' rights under a collective bargaining agreement to which it is a party *if it chooses* and that an employer may not refuse to arbitrate its contractual obligations with the union. These cases do not establish that a union which does bargain for its retirees becomes their *exclusive* representative and that the retirees then *must* proceed through the union.[4] In contrast, the Sixth Circuit has held that retirees may settle a claim against the company under the collective bargaining agreement even while the union has a suit pending on the issue. *International Union, UAW v. Yard-Man, Inc.*, 716 F.2d 1476, 1484–85 (6th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984).

Alpha cites *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), as supporting its argument that

---

**3.** Alpha offers two additional grounds for distinction that merit little discussion. First, it argues that *Schneider* involved interpretation of a trust agreement rather than of a collective bargaining agreement as here. That, however, is not an accurate characterization of this dispute. The insurance plan is embodied in a separate contract and pursuant to ERISA is treated as a trust, with Alpha as a fiduciary, even if collectively bargained. *See In re Vorpahl*, 695 F.2d 318, 320–21 (8th Cir.1982). Furthermore, the Supreme Court in *Schneider* specifically stated that its rule as to trustee-employer disputes applies "even if those disputes raise questions of interpretation under the collective-bargaining agreements." 104 S.Ct. at 1849 (footnote omitted). Second, Alpha argues that *Schneider*'s rejection of the presumption in favor of arbitrability does not extend to cases where, as here, there is no contract language giving plaintiffs the express right to resort directly to court. The Supreme Court, however, in the relevant passage of its opinion, does not mention this factor. *Id.* ERISA grants a statutory right to sue. 29 U.S.C. § 1132. To suggest that this legal right should be deemed waived in favor of mandatory arbitration if it is not made express in the contract reads back into *Schneider* the very presumption in favor of arbitrability that the Supreme Court rejected. In *Schneider* it is exhaustion of contractual remedies, not the right to sue, that must be express. *E.g., Schneider,* 104 S.Ct. at 1850.

**4.** Alpha at one point argues that the duty to represent individuals in grievance procedures arises from contract and cites this passage from a footnote in *Bowen v. U.S. Postal Serv.,* 459 U.S. 212, 225 n. 14, 103 S.Ct. 588, 596 n. 14, 74 L.Ed.2d 402 (1983): "When the collective-bargaining agreement provides the union with sole authority to press an employee's grievance, the union acts as the employee's exclusive representative in the grievance-arbitration procedure." The opening clause quoted, plus earlier language in the footnote, make clear that this exclusive representative status follows only when the contract establishes the grievance procedure as an exclusive remedy so that individual workers may no longer deal directly with the company. This argument thus presumes the issue—the proper interpretation of the contract—to be determined here. *Cf. Schneider,* 104 S.Ct. at 1851 n. 22.

individuals who are no longer members of the collective bargaining unit may still be required to invoke contract grievance procedures to settle disputes with the company. *Republic Steel*, however, involved a worker who had been laid off and was seeking severance pay under the collective bargaining agreement. The Supreme Court, in holding that that situation was not sufficiently different from grievances in general to justify an exception to the exhaustion requirement, said that use of contractual remedies would "complement[ ] the union's status as *exclusive* bargaining representative." *Id.* at 653, 85 S.Ct. at 616 (emphasis added). The Court found that issues concerning severance could have a significant effect on future union-company relations and could "inhibit" negotiations on subsequent collective bargaining agreements. *Id.* at 656, 85 S.Ct. at 618.

*Allied Chemical*, however, does answer both of these contentions.[5] A union, the Supreme Court held, is not the *exclusive* bargaining representative for retirees even when, as there, the insurance benefits modified by the company originally had been established through collective bargaining: The company did not commit an unfair labor practice by directly contacting retirees and proposing changes in the health plan. 404 U.S. at 183–88, 92 S.Ct. at 399–02.

The Supreme Court in *Allied Chemical* also found a union's interest in retirement benefits, unlike its interest in the severance provisions in *Republic Steel*, much more "speculative" because present employees would have no assurances that they were advancing their own interests by advancing pensioners' interests. They would have no guarantee of similar representation when they retired because active workers would not be bound to continue to bargain for retiree rights and could give up such rights and benefits in favor of more immediate interests. *Id.* at 181–82, 92 S.Ct. at 398–99. *Cf. Republic Steel*, 379 U.S. at 656, 85 S.Ct. at 618.[6]

Alpha responds that reconciling such conflicting interests of different groups of employees is exactly the province of a union. It relies on, among other precedents, *Humphrey v. Moore*, 375 U.S. 335, 349–50, 84 S.Ct. 363, 371–72, 11 L.Ed.2d 370 (1964); *Ford Motor Co. v. Huffman*, 345 U.S. 330, 337–39, 73 S.Ct. 681, 685–86, 97 L.Ed. 1048 (1953); and *Buchholtz v. Swift & Co.*, 609 F.2d 317, 328 (8th Cir.1979) (Heaney & Bright, JJ., concurring in denial of rehearing en banc), *cert. denied*, 444 U.S. 1018, 100 S.Ct. 672, 62 L.Ed.2d 648 (1980). These cases, however, involve varying priorities among active employees who, despite differences, had been found to have sufficiently similar interests to make them an "appropriate bargaining unit" in the contemplation of the National Labor Relations Act. In contrast, the Supreme Court in *Allied Chemical* held that retirees and active employees lacked the necessary "mutuality" or "community" of interests necessary to "assure the coherence among employees necessary for efficient collective bargaining and at the same time prevent a functionally distinct minority group of employees from being submerged." 404 U.S. at 172–73, 92 S.Ct. at 394. The cases cited by Alpha do not justify letting a union mediate the interests of a "functionally distinct minority" which cannot be made part of the bargaining unit and which, as the Supreme Court pointed out, does not have

---

**5.** The Supreme Court in *Allied Chemical* specifically distinguished individuals who, while not presently "employees" for some reason, were active members of the work force available for hire from individuals who had ceased work with no expectation of any further employment. 404 U.S. at 168, 92 S.Ct. at 392.

**6.** The Supreme Court on several occasions has acknowledged congressional concerns with ensuring that trust funds are managed in the interests of beneficiaries and not directed to the purposes of either union or management. *See United Mine Workers Health & Retirement Funds v. Robinson*, 455 U.S. 562, 571–72, 102 S.Ct. 1226, 1232, 71 L.Ed.2d 419 (1982); *NLRB v.*

a vote in union affairs. *Id.* at 175, 92 S.Ct. at 395.[7]

■ Finally, the Supreme Court holding in *Allied Chemical* that retiree benefits are only permissive and not mandatory topics for bargaining, 404 U.S. at 187, 92 S.Ct. at 401, eliminates concerns with inhibition of negotiations and with economic warfare. Retirees have no recourse to economic weapons other than a hope that active employees will strike in their behalf, a hope that was also available to the trustees in *Schneider*, who were similarly seeking to protect future interests of present employees and to enforce a contract to which the union was a party. The Supreme Court there, however, held this to be "no recourse." 104 S.Ct. at 1849. We must conclude that retirees are more similarly situated with trustees than with active employees and are equally "outside the collective bargaining relationship."[8] A presumption in favor of arbitrability again would further the "national labor policy of peaceful resolution of labor disputes * * * only indirectly, if at all." *Id.* The presumption then likewise is "not a proper rule of con-

struction in determining whether arbitration agreements between the union and the employer apply to disputes between [retirees] and employers, even if those disputes raise questions of interpretation under the collective-bargaining agreements." *Id.*[9]

## II.

■ Unaided by such a presumption, the contract language here cannot be read as requiring exhaustion of grievance procedures by retirees. As in *Schneider*, the relevant provisions address only grievances of "employees" and speak only of "employees" initiating the contractual dispute resolution procedures.[10] For much the same reasons as cause us to reject applicability of a presumption in favor of arbitrability, we also "will not engage the unlikely inference that the parties to [this] agreement[ ] intended to require [retirees] to rely on the Union" to handle their grievances. *Schneider*, 104 S.Ct. at 1851; *see id.* at 1850–51.[11] Furthermore, the context in

---

*Amax Coal Co.,* 453 U.S. 322, 331, 333–34, 101 S.Ct. 2789, 2795, 2796, 69 L.Ed.2d 672 (1981).

**7.** The existence of an actual conflict between the union and the retirees here, argued by the parties in debating whether exhaustion otherwise required should be excused, is not relevant in the context of determining whether the presumption of arbitrability is even applicable or in interpreting the contract on that point. *Allied Chemical* clearly deals with the high probability of conflict in general making it improper for retirees and active employees ever to be joined in a collective bargaining unit, without regard to the specific circumstances. Furthermore, the demise of Alpha's cement plant and resulting dissolution of the unit of active employees cannot influence the meaning of a contract, written when the business was operating, as to whether retirees must exhaust contractual remedies in the collective bargaining agreement.

**8.** "[T]he relationship of retiree and employer is unadorned with those special considerations peculiar to the relationship between an active employee, his union and the employer" since disputes will not affect the terms and conditions of employment as to which collective bargaining is mandatory and since retiree claims generally will rest on vested contractual rights as to which the "common strength" of a union is not needed for enforcement. *International Union, UAW v.*

*Yard-Man, Inc.,* 716 F.2d 1476, 1485 (6th Cir. 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984).

**9.** Such a presumption may have been expressed in our earlier panel opinion, *Anderson,* 727 F.2d at 180; *but see id.* at 184–85, and would have been consistent with the position taken by other circuits. *E.g., Challenger v. Local Union No. 1, Int'l Bridge, Structural & Ornamental Ironworkers,* 619 F.2d 645, 647 (7th Cir.1980); *Amato v. Bernard,* 618 F.2d 559, 567 (9th Cir.1980). All of those cases, however, were decided without the guidance of the Supreme Court's opinion in *Schneider.* We believe *Schneider* compels both the analysis and the result that we express here.

**10.** The arbitration clause in *Schneider* was to apply "should differences arise between the Company and the Union or any employee of the Company." *See Robbins v. Prosser's Moving & Storage Co.,* 700 F.2d 433, 442 n. 8 (8th Cir. 1983), *aff'd sub nom. Schneider Moving & Storage Co. v. Robbins,* —— U.S. ——, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984).

**11.** In our panel opinion we underscored the inherent conflicts in relegating retirees to an exclusive remedy of arbitration controlled by a union which owes them no duty of fair representation. 727 F.2d at 183; *see also Robbins v. Prosser's Moving & Storage Co.,* 700 F.2d 433,

which the grievance procedure is presented in the Alpha-Union contract makes any construction applying it to retirees even more strained. The article entitled "Handling of Complaints" begins, "All employees shall at all times make an effort to perform their duties in such manner as to promote the efficient operation of their department and the plant as a whole. When an employee has a grievance, he shall...." The initial steps in the grievance procedure (only the first of which is to be skipped for insurance claims) all involve taking complaints to a foreman or plant manager, individuals not convenient to retirees, who do not even have a "workplace." *Cf. Friedrich v. Local No. 780, International Union of Electrical, Radio & Machine Workers*, 515 F.2d 225, 228 (5th Cir.1975) (machinery of grievance procedure "clearly oriented exclusively toward employee initiated disputes" as opposed to complaints raised by the company); *Affiliated Food Distributors v. Local Union No. 229, International Brotherhood of Teamsters*, 483 F.2d 418, 421 (3d Cir.1973) (collective bargaining agreement not susceptible to a "fair construction" that it covered company-initiated grievances when grievance procedure would require company to refer its complaint to a union steward who would then present it back to a company official), *cert. denied*, 415 U.S. 916, 94 S.Ct. 1412, 39 L.Ed.2d 470 (1974).

The only language bearing on the necessity of exhaustion present in this instance but absent in *Schneider* is the clause in the insurance plan making claims thereunder "subject to" the grievance procedure in the collective bargaining agreement. This clause, however, does not expressly refer to exhaustion for *retirees* and need not be read as so expanding the scope of the

grievance procedure. The "subject to" language instead merely directs all persons covered by the insurance plan, employees and retirees alike, to the separate collective bargaining agreement for use of the grievance procedure *if otherwise applicable*. *See Anderson*, 727 F.2d at 185. As we have discussed, the grievance procedure is not applicable to retirees.

In addition, any implication that exhaustion is mandatory as to retirees is undermined by the reference in the summary plan description to filing of a written complaint as an alternate means of challenging a denial of insurance benefits. Alpha argues that this language can be given no effect because the terms of the insurance plan are controlling and the summary description cannot add to a beneficiary's rights. The case which Alpha cites in support of this position, however, *O'Brien v. Sperry Univac*, 458 F.Supp. 1179 (D.D.C. 1978), held only that there is no federal *jurisdiction* under 29 U.S.C. § 1132 when a claim arises under the summary description rather than under the insurance plan itself.[12] In a footnote, in fact, the court specifically preserved the question of whether plaintiffs might be entitled to some relief "under the terms of the summary plan description." *Id.* at 1180 n. 1. In any event, we are using the summary description not to add to the terms of the insurance plan but to illuminate the meaning and the intent of the parties when they crafted the "subject to" language, as discussed above. We find no justification for inferring that the reference to the grievance procedure is mandatory for retirees in light of the language and structure of the grievance procedure itself, *see Schneider*, 104 S.Ct. at 1850, and evidence of contemplation of alternate avenues of appeal.[13]

442 (8th Cir.1983), *aff'd sub nom. Schneider Moving & Storage Co. v. Robbins*, —— U.S. ——, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984).

**12.** This holding has been rejected in other circuits. *E.g., Gors v. Venoy Palmer Mkt.*, 578 F.Supp. 365, 368 (E.D.Mich.1984).

**13.** Alpha also cites *Van Orman v. American Ins. Co.*, 680 F.2d 301 (3d Cir.1982), for the proposi-

tion that the insurance plan alone contains the beneficiaries' rights and may not be altered by the summary description. The disclaimer accompanying the summary description in that case, however, was quite strong: "Complete details of the Plan are contained only in the Company's Revised Retirement Plan Dated April 1, 1957, which instrument governs the Plan * * *. All statements in the foregoing outline and explanations are qualified by reference to the Plan

Our conclusion that the language of the contract does not mandate exhaustion of the grievance procedure is in no way altered by *Bonnot v. Congress of Independent Unions Local No. 14,* 331 F.2d 355 (8th Cir.1964). The Alpha contract provides that, as the last step of the grievance procedure, the dispute "may by mutual agreement" · be submitted to arbitration. In *Bonnot* we held that in certain circumstances the term "may" merely allows that an employee may choose not to pursue his grievance but that if he does pursue it, he must seek arbitration. *Id.* at 359. Assuming that the Alpha contract were susceptible to this interpretation, the resulting mandatory arbitration provision still would apply only to individuals who were required to use the grievance procedure in the first place. Here, we have held that the language of the contracts does not require that retirees even initiate the grievance procedure, let alone reach the last step of arbitration. *Bonnot* has little bearing on our issue.

Congress in enacting ERISA declared a policy of protecting employee benefit plan participants by providing "ready access to the federal courts." 29 U.S.C. § 1001(b) (1982). Furthermore, there are strong practical reasons for allowing retirees to bring ERISA suits without first exhausting contractual remedies. The expertise of arbitrators is in the "law of the shop, not the law of the land," i.e., trusts, *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 57, 94 S.Ct. 1011, 1024, 39 L.Ed.2d 147 (1974), and arbitration might not result in a final decision. *Alexander, supra; cf. Clayton v. International Union, UAW,* 451 U.S. 679, 691–93, 101 S.Ct. 2088, 2096–97, 68 L.Ed.2d 538 (1981) (exhaustion of internal union remedies not required when member could not obtain relief sought). Finally, question might be raised as to whether mandatory arbitration would meet statutory requirements as to opportunities for fiduciary review of denials of benefit claims. 29 U.S.C. § 1133 (1982).

We find that the insurance plan here does not, through either express language, intent or presumption, require exhaustion of contractual remedies by retirees seeking disputed benefits. We thus reverse the grant of summary judgment in favor of Alpha. The retirees are entitled to pursue their claims in federal court.

BRIGHT, Circuit Judge, dissenting.

Previously, I filed a dissent to the panel opinion in this case, *Anderson v. Alpha Portland Industries, Inc.,* 727 F.2d 177, 185–187 (8th Cir.1984), and I adhere to that dissent.

The panel's opinion relied in part on *Robbins v. Prosser's Moving & Storage Co.,* 700 F.2d 433 (8th Cir.1983) (en banc) to support its determination that a union owes no duty of fair representation to retirees. I disagreed because that opinion did not take cognizance of the limited scope of our holding in *Robbins.* In *Robbins,* we recognized that under certain circumstances, a union might be required to arbitrate on behalf of the trustees of various health and welfare funds. We stated:

> Certainly it is true that arbitration, pension funds, and health and welfare funds, are all matters of contract. They either exist or not as the parties have agreed in the collective-bargaining contract and related documents. If the

itself." *Id.* at 304. In contrast, Alpha qualifies its summary description only by stating that:

[t]he purpose of this summary is to describe the Plan to you in nontechnical terms. It is intended to give you enough information to answer most of the questions you are likely to have. However, if we covered every detail of the Plan, it would no longer be a summary, but as technical as the full text itself; so if you have a specific question you should consult the Plan document.

To find that the Alpha insurance plan, even if it embodies all beneficiary rights, is not a total integration as to remedies would seem consistent with the purposes of 29 U.S.C. § 1022 (1982), which requires that the summary plan description include accurate information on the remedies available when insurance claims are denied. *See* H.R.Rep. No. 533, 93d Cong., 1st Sess., *reprinted in* 1974 U.S.Code Cong. & Ad. News 4639, 4649; S.Rep. No. 127, 93d Cong., 1st Sess., *reprinted in* 1974 U.S.Code Cong. & Ad. News 4838, 4847.

agreements in the cases before us provided in express words that trustees' claims could not come to court before questions of contract interpretation had been settled by arbitration, this would be quite a different case.

*Id.* at 442.

The Supreme Court granted certiorari in *Robbins* and affirmed the judgment of this court. *Schneider Moving & Storage Co. v. Robbins,* —— U.S. ——, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984). I believe the Court's opinion preserves the limited nature of our holding in *Robbins.* The Court stated:

There simply is no evidence that the Union owes any statutory or *contractual duty* of fair representation to the trustees. In the absence of such evidence, we will not engage the unlikely inference that the parties to these agreements intended to require the trustees to rely on the Union to arbitrate their disputes with the Employer. (Emphasis added) (footnotes omitted).

104 S.Ct. at 1851.

In the present case, as I have previously observed, the insurance agreements provide for arbitration by explicit language: "Any difference arising under this Program respecting the administration, determination and/or implementation of the Program shall be subject to the grievance procedure established in the Basic Agreement * * *." Thus, I think the district court properly determined that the retirees had failed to exhaust their contractual remedies.

I would affirm the district court, subject to the district court retaining jurisdiction in the event arbitration procedures cannot be carried out because of the closing of the cement plant and the dissolution of the local union.