**COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO, Plaintiff,**

v.

**MICHIGAN BELL TELEPHONE COMPANY, Defendant.**

**Civ. A. No. 84–CV–4207–DT.**

United States District Court, E.D. Michigan, S.D.

Nov. 27, 1985.

Bruce M. Miller, Duane Ice, Peter Kaplan, Miller, Cohen, Martens & Ice, Detroit, Mich., Michael T. Mulcahy, Cleveland, Ohio, for plaintiff.

Thomas G. Kienbaum, Theodore R. Opperwall, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, Mich., for defendant; Anthony A. Haisch, Mark S. Doman, Detroit, Mich., of counsel.

## OPINION

FEIKENS, Chief Judge.

The Communications Workers of America (CWA) brings this action against Michigan Bell Telephone Company (MBT) to compel arbitration of grievances arising under a collective bargaining agreement between the parties. In answer, MBT alleges that the dispute between the parties is not arbitrable. Further MBT counterclaims to enjoin arbitration, alleging that the Grievants seek payments proscribed by § 302 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 186. Both parties move for Summary Judgment. I have jurisdiction pursuant to § 301 of the LMRA, 29 U.S.C. § 185.

The Grievants, Florine Anderson and Charles Echlin, work full-time as representatives of CWA.[1] They have done so since 1980, when CWA Vice President, Martin Hughes, appointed the Grievants to their posts. Prior to their appointment in 1980, the Grievants worked full-time for MBT under a collective bargaining agreement between CWA and MBT. When the Grievants began working for CWA, MBT granted them "time off" pursuant to Article 8[2] of the agreement. Sometime after their appointment, Echlin and Anderson grieved their leave treatment under the contract between CWA and MBT. The Grievants want MBT to treat them as if on "absent union time" ("AU time"); MBT refuses to do so, and continues to treat them as if on "class one leave."[3]

It has not been entirely clear why the Grievants seek "AU time" treatment. At the outset of the lawsuit, and up through the first hearing on the parties' motions for Summary Judgment, the Grievants seemed to be seeking additional benefits associated with "AU time."[4] But in a supplemental brief, and during a second hearing on the motions, Plaintiff's Counsel made it clear that the Grievants are seeking "AU time" for the sole purpose of extending their

---

1. By letter dated October 21, 1985, Plaintiff's Counsel informed the Court that one of the Grievants, Charles Echlin, retired from his work with CWA during May, 1985.

2. Article 8 is entitled "Time Off for Union Business."

3. Supplemental briefs indicate that the term "class one leave" actually refers to a "leave of absence for union business." Thomas Diekman, Administrative Assistant to the Vice President of CWA, used "class one leave" in his deposition as shorthand for "leave of absence for union business." Diekman Depo. 18, 38, 43–44. I will use the shorthand term in this opinion.

4. Diekman stated that "AU time" includes more benefits than does "class one leave." Diekman Depo. 38–39, 47–48. In addition, Plaintiff originally argued that I should defer decision on the illegality issue raised by Defendant's counterclaim until after arbitration. Plaintiff argued that I would be better situated to consider the illegality question after knowing concretely what benefits, if any, the arbitrator awarded the Grievants. Only after receiving an October 21, 1985, letter from Plaintiff's Counsel did I learn that the Grievants seek only leave time extension, and not additional benefits.

total allowable leave time from fifteen years to thirty years.[5] The underlying dispute between the parties, then, is whether total allowable leave time for full-time CWA Staff Representatives is fifteen calendar years, or thirty calendar years.[6]

The question I must decide is whether this underlying dispute is arbitrable. Arbitrability is essentially a question of contractual interpretation, "and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *United Steelworkers v. Warrior & Gulf Navigation,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). In most labor cases the presumption of arbitrability created by the *Steelworkers Trilogy*[7] guides interpretation of the parties' agreement, but *Schneider Moving & Storage Co. v. Robbins,* 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984), prevents a mechanical application of the *Steelworkers* presumption in labor cases presenting facts that do not justify use of the presumption.

The presumption of arbitrability rests upon the reasonable ·proposition that parties in a collective bargaining relationship want to settle their disputes as inexpensively as possible. Arbitration is cheaper and less disruptive than economic warfare involving strikes and lockouts. It is therefore sensible to presume that the parties intend to arbitrate their contractual disputes. In addition, the presumption serves the national policy of settling labor disputes with minimal disruption to the national economy.[8] But when parties involved in a collective bargaining relationship disagree over a matter that cannot lead to economic disruption, there is no justification for applying the *Steelworkers* presumption.

Using this reasoning, the Supreme Court refused in *Schneider* to apply the presumption of arbitrability in a pension dispute between the trustees of the pension fund and the contributing employer. The Court stated:

> Arbitration promotes labor peace because it requires the parties to forego the economic weapons of strikes and lockouts. Because the trustees of employee-benefit funds have no recourse to either of those weapons, requiring them to arbitrate disputes with the employer would promote labor peace only indirectly, if at all. We conclude, therefore, that the presumption of arbitrability is not a proper rule of construction in determining whether arbitration agreements between the union and the employer apply to disputes between trustees and employers, even if those disputes raise questions of interpretation under the collective-bargaining agreements.

*Schneider,* 104 S.Ct. at 1849 (footnotes omitted).

The Supreme Court's rationale is not confined to disputes between trustees and employers. In *Anderson v. Alpha Portland Industries, Inc.,* 752 F.2d 1293 (8th Cir. 1985), *cert. denied,* —— U.S. ——, 105 S.Ct. 2329, 85 L.Ed.2d 846 (1985), the Court of Appeals applied *Schneider* and refused to use the presumption of arbitrability in a dispute between an employer and some of its retired employees. The Court reasoned:

---

**5.** The August 10, 1980, contract (attached to the complaint) provides a leave limit of twelve years. The parties inform me that the contract currently in force contains a limit of fifteen years. In either case, Plaintiff's contractual argument is that it can double the effective length of the stated limit by classifying Grievants as on "AU time" for 120 working days per year, and on "class one leave" for the year's remaining 120 working days.

**6.** Although the parties are litigating fervently, there has been no showing that the Grievants are in danger of running up against the leave limit, however calculated.

**7.** *Warrior & Gulf, supra; United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

**8.** These propositions are developed at length in the *Steelworkers Trilogy. Cf. Schneider,* 104 S.Ct. at 1489 n. 14 (justifying application of the presumption of arbitrability where it "serves the national labor policy and fully accords with the probable intent of the parties").

We cannot agree [with the defendant employer] that *Schneider* divides the world of labor plaintiffs into "trustees" and "non-trustees" with the presumption of arbitrability applying to all but the former; the issue instead is whether the retirees here are more similarly situated with the trustees in *Schneider* or with active employees and their unions as to whom arbitration generally has been required.

. . . .

. . . Retirees have no recourse to economic weapons other than a hope that active employees will strike in their behalf, a hope that was also available to the trustees in *Schneider*, who were similarly seeking to protect future interests of present employees and to enforce a contract to which the union was a party. The Supreme Court there, however, held this to be "no recourse." 104 S.Ct. at 1849. We must conclude that retirees are more similarly situated with trustees than with active employees and are equally "outside the collective bargaining relationship."

*Anderson*, 752 F.2d at 1296, 1298 (footnote omitted).

■ After considering *Schneider* and *Anderson*, I hold that the case before me is one in which the presumption of arbitrability does not apply. The Grievants are outside of the collective bargaining relationship between CWA and MBT. They are members of their own bargaining unit of CWA employees who negotiate with CWA over the terms and conditions of employment with CWA. They receive their wages and primary benefits from CWA, not MBT. Furthermore, they receive their daily work instructions from CWA, not MBT.[9] Active employees of MBT, in contrast, bargain with MBT over their terms and conditions of employment, receive their wages and

benefits from MBT, and receive their work instructions from MBT. In short, traditional indicia of employment reveal that the Grievants are really employees of CWA and not of MBT. *Cf. Reinforcing Iron Workers Local Union 426 v. Bechtel Power Corp.*, 463 F.Supp. 643 (E.D.Mich.1978), *aff'd*, 634 F.2d 258 (6th Cir.1981) ("Industry steward" working under the direction and supervision of the Union is employee of the Union).

In addition, this case does not present a risk of economic disruption. These Grievants may not wield economic weapons against MBT on their own behalf. Like *Anderson's* retirees and *Schneider's* trustees, they can only hope that active employees will intervene for them. This is not a risk sufficient to warrant application of the presumption of arbitrability. *Schneider*, 104 S.Ct. at 1489; *Anderson*, 752 F.2d at 1298.

■ The question I must now decide without a presumption of arbitrability is whether the parties agreed to submit to arbitration their underlying dispute over maximum leave time. The arbitration clause in the parties' agreement is broad, covering controversies "between the Union and the Company regarding the true intent and meaning of any provision of this Agreement between the parties."[10] But without a presumption of arbitrability, a broad arbitration clause is only one factor to consider in construing the parties' intent.[11] After considering this clause in light of the factors discussed below, I hold that the parties did not agree to send their underlying dispute to arbitration.

First, the bargaining unit to which the contract in this case applies includes only "employees of the Company whose job title appears in Appendix B to Part 1 of this

---

9. Diekman Depo. 18–21, 27.

10. August 10, 1980, contract, § 15.12.

11. In *Schneider* the Court concluded ultimately that the parties did not agree to submit the dispute to arbitration despite a broad arbitra-

tion clause, requiring "arbitration of any 'differences . . . between the Company and the Union or any employee of the Company as to the meaning or application of the provisions of [the collective-bargaining] agreement.'" *Schneider*, 104 S.Ct. at 1848 (quoting contract).

Agreement."[12] The job of Union Staff Representative does not appear in the Appendix. This is as it should be, because (as noted earlier) the Grievant Staff Representatives are members of their own bargaining unit which negotiates with CWA over terms and conditions of CWA employment. Since the Grievants are evidently not members of the bargaining unit to which the contract applies, it is reasonable to conclude that the parties did not intend to apply the contractual arbitration machinery to them.[13]

Second, according to both Plaintiff and Defendant, the underlying dispute in this case has arisen on prior occasions. On such occasions, the parties resolved their differences by negotiating at the bargaining table a new and longer maximum leave period. In this fashion, the maximum leave period has steadily lengthened over the years of the collective bargaining relationship between the parties. This prior practice of the parties is further evidence of the parties' intention not to submit this particular dispute to arbitration.

Third, the contractual language used to describe the leave limit evidences an intent to foreclose manipulative calculations designed to extend the stated leave limit. The August 10, 1980, contract (attached to the complaint) states that "[t]he *total period* of the leave of absence granted to any employee pursuant to this Article, *whether such period is continuous or intermittent,* shall not exceed twelve (12) years."[14] Particularly considering the parties' history of negotiating over this issue, the quoted language reveals an intention to fix a definite time limit on allowable leave, subject to extension only by the historical method of periodic negotiation.

12. August 10, 1980, contract, § 1.1.

13. *Cf. United Steelworkers of America, Local No. 1617 v. General Fireproofing Co.,* 464 F.2d 726 (6th Cir.1972) (reversing an arbitration order in a dispute involving a supervisor where the contract's recognition clause excluded supervisors from coverage); *General Telephone Co. v. Communications Workers,* 402 F.2d 255 (9th Cir. 1968) (same).

Since I hold that the parties did not agree to submit this matter to arbitration, I need not consider the issue of illegality raised by Defendant's counterclaim.

Plaintiff's Motion for Summary Judgment is DENIED. Defendant's Motion for Summary Judgment is GRANTED.

An appropriate order may be submitted.

Defendant relies on these cases in arguing that the underlying dispute in this matter is not arbitrable even if the presumption of arbitrability applies. Because I hold that the presumption does not apply, I need not evaluate this argument.

14. August 10, 1980, contract, § 8.25 (emphasis added).