**COMMUNICATIONS WORKERS OF AMERICA, Plaintiff-Appellant,**

v.

**MICHIGAN BELL TELEPHONE COMPANY, Defendant-Appellee.**

No. 86–1084.

United States Court of Appeals,
Sixth Circuit.

Argued April 24, 1987.

Decided June 4, 1987.

Duane F. Ice, argued, Miller, Cohen, Martens & Ice, Southfield, Mich., for plaintiff-appellant.

Thomas G. Kienbaum, argued, Dickison, Wright, Moon, Van Dusen & Freeman, Detroit, Mich., for defendant-appellee.

Before MARTIN and MILBURN, Circuit Judges, and ALDRICH, District Judge *.

MILBURN, Circuit Judge.

Plaintiff-appellant Communications Workers of America ("CWA") appeals from the district court's entry of summary judgment in favor of defendant-appellee Michigan Bell Telephone Company ("MBT") in this action to compel arbitration of a dispute arising under a collective bargaining agreement between CWA and MBT. The

district court's opinion is reported at 622 F.Supp. 275 (E.D.Mich., 1985). For the reasons that follow, we reverse.

## I.

CWA and MBT were parties to a collective bargaining agreement effective August 1980 through August 1983. Section 8.13 of the collective bargaining agreement provided that "[a]uthorized Union representatives shall be excused without pay upon request from the Union for a total of one hundred and twenty (120) working days during any calendar year" and that "[s]uch excused time shall be considered as time worked for the purpose of computing daily or weekly overtime pay, where such payments are required by contract or law." Further, section 8.14 of the collective bargaining agreement provided that "[a]n authorized Union representative who requires time off of more than one hundred and twenty (120) working days during a calendar year may be granted a leave of absence of not more than one (1) year upon request from the Union." Finally, section 8.25 of the collective bargaining agreement provided that "the Company shall grant leaves of absence for union business for an initial period not to exceed one (1) year" and that "[t]he total period of the leave of absence granted to any employee pursuant to this article, whether such period is continuous or intermittent, shall not exceed twelve (12) years."

Prior to their appointment as full-time representatives of CWA, Florine Anderson and Charles Echlin worked full-time for MBT. Anderson and Echlin began work as CWA representatives in 1980 and were granted leaves of absence for union business pursuant to section 8.14 of the collective bargaining agreement. CWA filed a grievance asserting that Anderson and Echlin had been denied time off for union business as provided for in section 8.13 of the collective bargaining agreement. Following MBT's denial of the grievance, CWA sought arbitration pursuant to sec-

* The Honorable Ann Aldrich, Judge, United States District Court for the Northern District of Ohio, sitting by designation.

tion 15.12 of the collective bargaining agreement which provided for arbitration of any controversy "between the Union and the Company regarding the true intent and meaning of any provision" of the collective bargaining agreement. MBT refused to arbitrate the grievance and CWA filed an action to compel arbitration.

### A. *Presumption of Arbitrability*

CWA argues that the district court erred by refusing to apply the presumption of arbitrability announced by the Supreme Court in *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).[1] The Court in *Warrior & Gulf* held that while the issue of whether a collective bargaining agreement creates a duty for the parties to arbitrate the particular grievance is an issue for judicial determination, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." 363 U.S. at 582–83, 80 S.Ct. at 1352–53. "This presumption of arbitrability for labor disputes recognizes the greater institutional competence of arbitrators in interpreting collective bargaining agreements, 'furthers the national labor policy of peaceful resolution of labor disputes and thus best accords with the parties' presumed objectives in pursuing collective bargaining.'" *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986) (quoting *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 371–72, 104 S.Ct. 1844, 1848–49, 80 L.Ed.2d 366 (1984)).

The district court premised its refusal to apply the presumption of arbitrability upon the Court's decision in *Schneider Moving & Storage*, reasoning that the present dispute does not pose a risk of economic disruption because Anderson and Echlin were

employees of CWA rather than MBT. The Court in *Schneider Moving & Storage* held the presumption of arbitrability inapplicable to disputes between employers and trustees of employee-benefit funds established pursuant to a collective bargaining agreement. The Court recognized that the presumption of arbitrability "*is an accepted rule of construction in determining the applicability of an arbitration clause to disputes between the union and the employer*[,]" but reasoned that there is "less to commend the presumption in construing the applicability of arbitration clauses to disputes between the employer and the trustees of employee-benefit funds." 466 U.S. at 371–72, 104 S.Ct. at 1848–49 (emphasis added). The court explained:

> Arbitration promotes labor peace because it requires the parties to forgo the economic weapons of strikes and lockouts. Because the trustees of employee-benefit funds have no recourse to either of those weapons, requiring them to arbitrate disputes with the employer would promote labor peace only indirectly, if at all. We conclude, therefore, that the presumption of arbitrability is not a proper rule of construction in determining whether arbitration agreements between the union and the employer apply to disputes between trustees and employers, even if those disputes raise questions of interpretation under the collective-bargaining agreements.

466 U.S. at 372, 104 S.Ct. at 1849 (footnote omitted). The Court cautioned, however, that "[t]*he presumption of arbitrability is, of course, generally applicable to any disputes between the union and the employer* [*because* ] [*i* ]*n those circumstances, the presumption serves the national labor policy and fully accords with the probable intent of the parties.*" *Id.* at 372 n. 14, 104 S.Ct. at 1849 n. 14 (emphasis added).[2]

---

1. *Warrior & Gulf,* along with *United Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), and *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d

1424 (1960), are commonly referred to as the "Steelworkers Trilogy."

2. The Court's statement may well be categorized as dictum since it did not decide the precise issue before the court, but the statement is still

The district court's analysis of whether the present dispute poses a threat to labor peace is essentially flawed. The Court's decision in *Schneider Moving & Storage* is premised upon the recognition that disputes between benefit fund trustees and employers " 'cannot, as can disputes between parties in collective bargaining, lead to strikes, lockouts, or other exercises of economic power.' " 466 U.S. at 372 n. 13, 104 S.Ct. at 1849 n. 13 (quoting *NLRB v. Amax Coal Co.*, 453 U.S. 322, 337, 101 S.Ct. 2789, 2798, 69 L.Ed.2d 672 (1981)). The present dispute between CWA and MBT, unlike the dispute in *Schneider Moving & Storage*, is a dispute between "parties in collective bargaining," and CWA, unlike the trustees in *Schneider Moving & Storage*, has recourse to the economic weapons of strikes and lockouts. Because CWA and MBT are "parties in collective bargaining" and because CWA has recourse to economic weapons, arbitration of the present dispute would promote labor peace by avoiding the possibility of economic disrupton. *See Schneider Moving & Storage*, 466 U.S. at 372–73, 104 S.Ct. at 1849–50.

■ The district court mistakenly interpreted *Schneider Moving & Storage* as precluding application of the presumption of arbitrability to disputes between the union and the employer where the union is asserting the interests of parties outside the collective bargaining unit. The Court in *Schneider Moving & Storage* in no way implied that the presumption of arbitrability would have been inapplicable if the union had demanded arbitration of the contractual issues pressed by the trustees. On the contrary, the Court phrased the issue presented as whether the trustees were bound by the arbitration clauses to the same extent the union would have been if it had sought judicial enforcement of the collective bargaining agreements. 466 U.S. at 370, 104 S.Ct. 1848. Further, whether

the dispute between the union and the employer involves the union's assertion of the contractual interests of those outside the collective bargaining unit is not dispositive in determining whether failure to arbitrate the dispute poses a risk of economic disruption. The critical inquiry under *Schneider Moving & Storage* is whether the parties involved in the dispute have recourse to economic weapons. *See* 466 U.S. at 372, 104 S.Ct. at 1849.

The district court's mistaken interpretation of *Schneider Moving & Storage* was implicitly rejected in *Anderson v. Alpha Portland Industries*, 752 F.2d 1293 (8th Cir.) (en banc), *cert. denied*, 471 U.S. 1102, 105 S.Ct. 2329, 85 L.Ed.2d 846 (1985). There, the Eighth Circuit held that the presumption of arbitrability is inapplicable to disputes between employers and retirees who are outside the collective bargaining unit. 752 F.2d at 1298. The court, however, noted that the union had standing to assert the retirees' rights under the collective bargaining agreement to which it was a party and that if the union chose to assert those rights, the employer could not "refuse to arbitrate its contractual obligations with the union." 752 F.2d at 1296.

## B. *Arbitrability of the Dispute*

CWA argues that the district court erred in concluding that the parties did not agree to submit to arbitration the underlying dispute over leave time. The arbitration clause of the collective bargaining agreement renders arbitrable any controversy "between the Union and the Company regarding the true intent and meaning of any provision" of the collective bargaining agreement. Despite this unambiguous language, the district court concluded that the parties did not agree to submit the matter to arbitration because Anderson and Echlin were not members of the collective bargaining unit.[3] The district court reasoned

---

"of persuasive precedential value." *Jordon v. Gilligan*, 500 F.2d 701, 707 (6th Cir.1974), *cert. denied*, 421 U.S. 991, 95 S.Ct. 1996, 44 L.Ed.2d 481 (1975).

**3.** The district court also relied upon the manner in which similar disputes had been resolved in

the past, finding that the parties had previously resolved similar disputes through negotiation rather than arbitration. The district court, however, neglected to mention the January 1975 letter from MBT Vice-President Harrington to CWA stating that MBT would be willing to ac-

that Anderson and Echlin were not members of the bargaining unit because the job of Union Staff Representative was not contained in the list of employee job titles listed in the collective bargaining agreement.

The presumption of arbitrability is, however, particularly applicable where, as here, the arbitration clause provides for arbitration of any controversies regarding interpretation of the contract. *AT & T Technologies,* 106 S.Ct. at 1419. The district court's reliance upon the fact that the job of Union Staff Representative was not included on the list of employee job titles is also misplaced. Although Anderson and Echlin were not employees in the sense of performing work on a daily basis in a job title set forth in the contract, they were "employees" on excused leave who retained residual rights under the collective bargaining agreement. The obvious purpose of section 8.13 of the collective bargaining agreement was to accord certain residual rights to persons who ceased performing work on a daily basis in a job title in order to become union representatives. The present controversy concerns the scope of these residual rights and is obviously a controversy "regarding the true intent and meaning" of a provision of the collective bargaining agreement.

The district court's reasoning was explicitly rejected in *United Food & Commercial Workers Union, Local 197 v. Alpha Beta Co.,* 736 F.2d 1371, 1376 (9th Cir. 1984). There, the Ninth Circuit held that the arbitration clause, which provided for arbitration of disputes "involving or arising out of the meaning, interpretation, application or alleged violation" of the collective bargaining agreement, required arbitration of a dispute between the employer and the union over a provision of the collective bargaining agreement that provided for the employer to make trust fund contributions on behalf of employees transferred to stores outside the bargaining unit. 736 F.2d at 1374–75. The court found the employer's argument that the dispute was not arbitrable because the transferred employees were no longer in the collective bargaining unit to be wholly without merit. "[The employer's] argument that the dispute is not arbitrable because the transferred employees are no longer in the bargaining unit misses the point entirely. The dispute obviously arises out of the collective bargaining agreement, and equally obviously involves the 'interpretation' or 'application' of that agreement." 736 F.2d at 1375.

### C. *Legality of Section 8.13*

MBT argues that interpretation of section 8.13 of the collective bargaining agreement as providing for payment of fringe benefits or pension credits to union staff representatives would violate section 302(a) of the Labor Management Relations Act, 29 U.S.C. § 186(a), which makes it "unlawful for any employer ... to pay, lend, or deliver, any money or other thing of value ... to any representative of any of his employees." While the district court did not resolve this issue, it did conclude that CWA was seeking "only leave time extension, and not additional benefits." The district court explained that CWA's contractual contention "is that it can double the effective length of the [twelve year] limit by classifying [Anderson and Echlin] as on 'AU time' for 120 working days per year, and on 'class one leave' for the year's remaining 120 working days." *Moreover, counsel for CWA stipulated during oral argument that it is seeking only leave time extension and that pension or fringe benefits are not sought in any way, shape or form.*

"When a party seeks to avoid arbitration on the ground that a contract clause is illegal, a district court may grant relief if the contract clause 'on its face violates federal labor law or is contrary to federal labor policy.'" *R.B. Electric, Inc. v. Local 569, International Brotherhood of Electrical Workers,* 781 F.2d 1440, 1442 (9th Cir.1986) (quoting *Alpha Beta,* 736 F.2d at 1376). Arbitration will not be precluded unless " 'all possible interpretations of the contract provision would result in a conflict

cept a grievance on the issue of leave for union representatives.

[with federal labor law].' " 781 F.2d at 1442 (quoting *Alpha Beta*, 736 F.2d at 1377). Section 8.13 could obviously be interpreted as providing only for leave time and not for payment of fringe benefits or pension credits. Since section 8.13 is susceptible to a lawful interpretation, it must be left to the arbitrator to determine the proper interpretation.[4] 781 F.2d at 1442.

### III.

Accordingly, the judgment of the district court is REVERSED and the case is REMANDED to the district court for proceedings consistent with this opinion.

4. We need not decide whether provision of fringe benefits or pension credits under these circumstances would violate section 302(a).