**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0548n.06
Filed: August 2, 2006

**No. 05-3252**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **LEE KELLHOFFER,** | ) | |
| *Plaintiff-Appellant,* | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF |
| **COLUMBUS SOUTHERN POWER** | ) | OHIO AT COLUMBUS |
| **COMPANY;** | ) | |
| **INTERNATIONAL BROTHERHOOD OF** | ) | |
| **ELECTRICAL WORKERS,** | ) | **O P I N I O N** |
| *Defendants-Appellees.* | ) | |
| | ) | |
| | ) | |

**BEFORE:     COLE, GILMAN, and FRIEDMAN,**[*] **Circuit Judges.**

**Friedman, Circuit Judge.**  The district court dismissed, for lack of jurisdiction, a suit under § 301 of the Labor Management Relations Act, 1947 ("Section 301"), 29 U.S.C. § 185, in which a discharged employee challenged his former employer's refusal to participate in the arbitration step of the grievance procedure under a collective bargaining agreement that had expired. The correctness of that ruling depends upon whether the employer's obligation to arbitrate under the agreement survived the agreement's expiration. We agree with the district court that the employer's duty to arbitrate did not so survive, and therefore we affirm.

I

---

[*]Daniel M. Friedman, Senior Circuit Judge of the Court of Appeals for the Federal Circuit, sitting by designation.

A.  The appellee Columbus Southern Power Company ("Columbus" or "the Company"), for whom the appellant Lee Kellhoffer worked, had a collective bargaining agreement ("the Agreement") with the appellee Local 1466 of the International Brotherhood of Electrical Workers ("the Union"), of which Kellhoffer was a member.  The Agreement had a three-year term, and continued thereafter "for yearly periods" unless either party notified the other in writing at least 60 days before the Agreement's termination that it "desire[d] to commence negotiation for a new contract."  Art. II, § 1.

The Agreement had a grievance procedure, the final step of which was the submission of the grievance to arbitration.  Art. VII, §§ 2-6.  The grievance procedure was triggered by the Union giving the company written notification "of its desire to arbitrate."  Art. VII, § 6(a).  Article VII, Section (g) of the Agreement stated that "[t]he arbitrator shall have no authority to . . . (5) pass upon any question arising from incidents that occur after this Agreement has expired."

B.  Prior to the expiration of the Agreement on July 14, 2003 (the end of its three year term), the Union timely had notified the Company that it "desire[d] to commence negotiation for a new collective bargaining agreement." Those negotiations began on June 3, 2003, and the parties did not reach agreement until September 12, 2003.

According to an uncontested affidavit of James Sullivan, the Labor Relations Manager of Columbus' parent corporation, who represented Columbus in the negotiations, at a meeting with the Union on July 18, 3003, after the Company had given the Union "its best and final" offer, Mr. Sullivan

reminded the Union that there was no labor contract in effect because the 2000-2003

labor contract had expired at midnight on July 14, 2003. I specifically told the Union that because no contract was in effect, CSP would not agree to arbitrate any cases that arose after the contract expiration, including any discipline and discharge matters.

C. On July 17, 2003, three days after the Agreement expired, Kellhoffer failed a random drug test. Columbus discharged him, effective September 4, 2003, after he failed a second test.

The Union invoked the contractual grievance procedure to challenge Kellhoffer's discharge. After the Company had rejected the grievance in the third step of the procedure, the Union formally requested the Company to arbitrate the dispute. The Company denied that request. In a letter to the Union, it stated:

> Your request for arbitration is denied as Mr. Kellhofer's termination occurred after the expiration of the Memorandum of Agreement; and, Article VII, Section 6(g) of the expired Agreement clearly states that an arbitrator has no authority to pass upon any question arising from incidents that occur after the expiration of the Agreement.

Kellhoffer then filed the present Section 301 suit against the Company and the Union in the United States District Court for the Southern District of Ohio. His complaint alleged that the Company had violated his rights under the Agreement by discharging him, and that the Union had violated its duty to him of fair representation in failing to file an action to compel arbitration "and/or the prosecution of an unfair labor practice to the National Labor Relations Board." The complaint sought damages and Kellhoffer's reinstatement.

In response to Columbus' motion to dismiss or for summary judgment, the district court determined to treat the motion as one for summary judgment, and granted it. The court held that it lacked jurisdiction over Kellhoffer's claim against Columbus because, under Section 301, jurisdiction depended upon the existence of a collective bargaining agreement at the time the

conduct challenged in the suit took place; that there was no written collective bargaining agreement when Columbus discharged Kellhoffer; and that "the evidence indicates that [Columbus] was merely undertaking its duty to bargain in good faith during the period of July 14, 2003 to September 12, 2003 and that an implied contract could not be inferred from this conduct."

The court on its own motion dismissed the complaint against the Union. "To recover against either an employer or a union under § 301, a plaintiff must show that the employer breached a collective bargaining agreement *and* that the union breached its duty of fair representation. If the first claim against the employer fails for lack of subject matter jurisdiction, then the breach of duty of fair representation claim against the union must necessarily fail with it" (citations omitted).

II

Section 301 provides in pertinent part that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). "Jurisdiction in a § 301 claim is premised upon the existence of a contract, which an employer subsequently breaches. Section 301 opens the federal courthouse only to 'suits for violation of contracts.' 'Where there is no contract, the courts have no jurisdiction.'" *Bauer v. RBX Indus., Inc.*, 368 F.3d 569, 578 (6th Cir. 2004) (citations omitted); *see also Heussner v. Nat'l Gypsum Co.*, 887 F.2d 672, 676 (6th Cir. 1989) ("[U]nder Section 301(a), district courts possess subject matter jurisdiction in cases involving an alleged violation of an existing collective bargaining contract."); *Johnson v. Pullman, Inc.*, 845 F.2d 911, 914 (11th Cir. 1988) ("A federal court has jurisdiction over a suit for a violation of a collective

bargaining agreement under [S]ection 301 only while the agreement is in force.").

As the district court correctly noted, "no signed collective bargaining agreement was in effect" when Columbus discharged Kellhoffer on September 4, 2003. This was after the old agreement had expired on July 14, 2003 and before the parties agreed on a new contract on September 12, 2003.

As this court has recognized, however, "the existence of a labor contract 'does not depend on its reduction in writing; it can be shown by *conduct* manifesting an intention to abide by agreed-upon terms.'" *Int'l Bhd. of Boilermakers, Local 1603 v. Transue & Williams Corp.*, 879 F.2d 1388, 1392 (6th Cir. 1989) (quoting *Bobbie Brooks, Inc. v. International Ladies Garment Workers Union*, 855 F.2d 1164, 1168 (6th Cir. 1984) (emphasis original)). Thus, the parties to an expired collective bargaining agreement by their conduct may show the intent to continue the contract, in whole or in part, while in negotiations for a new contract. *See Luden's Inc. v. Local Union No. 6 of the Bakery, Confectionary, & Tobacco Workers Int'l Union*, 28 F.3d 347, 354-55 (3d Cir. 1994); *Int'l Bhd. of Boilermakers*, 872 F.2d at 1392. Here "the Court must determine whether the parties intended to arbitrate the dispute, even if it requires the Court to interpret a provision of the expired agreement." *Int'l Bhd. Of Teamsters, Local Union 1199 v. Pepsi Cola Gen. Bottlers, Inc.*, 958 F.2d 1331, 1333 (6th Cir. 1992).

Kellhoffer contends that by continuing to follow some of the terms and conditions of the Agreement after its termination, Columbus manifested its intent to continue the old agreement until its replacement had been agreed upon. The record shows, however, that the company did not intend to continue the contractual provisions providing for arbitration of disputes under the grievance

procedure after the expiration of the Agreement.

Four days after the Agreement had expired and during the negotiations over a new agreement, Sullivan, the Company's chief negotiator, pointed out to the Union that "there was no labor contract in effect because the 2000-2003 labor contract had expired at midnight on July 14, 2003," and "specifically told the Union that because no contract was in effect, [Columbus] would not agree to arbitrate any cases that arose after the contract expiration, including any discipline and discharge matters." *See Luden's*, 28 F.3d at 355-56 ("[W]hen a contract lapses but the parties to the contract continue to act as if they are performing under a contract, [old terms] survive intact unless either one of the parties . . . indicates . . . it no longer wishes to continue to be bound thereby . . ." Sullivan's statements were foreshadowed by and implemented the provision in the Agreement denying the arbitrator under the grievance procedure "authority to . . . pass upon any question arising from incidents that occur after this Agreement has expired." *Compare Nolde Bros. v. Bakery & Confectionary Workers Union*, 430 U.S. 243, 252-53 (relying on the absence of language in the agreement "expressly exclud[ing]" disputes that occur "after [the agreement's] termination" to require arbitration in another circumstance).

On this record, there was no collective bargaining provision requiring arbitration of grievances in effect when Kellhoffer failed the two drug tests and when Columbus discharged him. Indeed, in this case there were no "material facts and circumstances" that "arose prior to the expiration of the old Agreement." *S. Cent. Power Co. v. Int'l Bhd. of Elec. Workers*, 186 F.3d 733, 740 (6th Cir. 1999). The district court therefore correctly dismissed, for lack of jurisdiction, the portion of Kellhoffer's complaint that alleged that the Company had violated the Agreement by

discharging him.

The district court also properly dismissed the portion of the complaint that alleged that the Union had violated its duty of fair representation by failing to press his complaint further after the Company had refused to arbitrate the dispute.

Kellhoffer's claims against both the Company and the Union "are deemed 'hybrid' § 301 claims." *Bauer*, 368 at 578. "In a hybrid suit under § 301, to recover against either the employer or the union, a plaintiff must show that the employer breached the collective bargaining agreement *and* that the union breached its duty of fair representation. 'Unless [plaintiff] demonstrates both violations, he cannot succeed against either party.'" *Adcox v. Teledyne Indus., Inc.*, 21 F.3d 1381, 1386 (6th Cir. 1994) (citations omitted). Since, as we have held, there was no breach of a collective bargaining agreement here in the Company's refusal to arbitrate Kellhoffer's challenge to his discharge, Kellhoffer's fair representation claim against the Union also "must fail." *Adcox*, 21 F.3d at 1386.

## CONCLUSION

The judgment of the district court dismissing Kellhoffer's complaint is affirmed.